In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00505-CV

_____

JEFFERSON COUNTY, TEXAS, Appellant

V.

HA PENNY NGUYEN, Appellee

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-177,132

## MEMORANDUM OPINION

This appeal concerns an employment dispute between Appellant, Jefferson County (the "County"), and Appellee, Ha Penny Nguyen (Nguyen), a former County employee. The County appeals from a Judgment rendered in favor of Nguyen, following a jury trial wherein the jury found that Nguyen was subjected to adverse employment actions, retaliation for protected speech, and a violation of her

1

due process rights while she was employed by the County as a clerk in the offices of the Justices of the Peace for Precinct 8 and Precinct 1. Nguyen alleged claims under 42 U.S.C. § 1983 for adverse employment actions she contends were taken in violation of her First Amendment rights to free speech and freedom of association, and then also for a denial of due process. The County contends that there is no evidence or insufficient evidence to support the jury's findings related to each of Nguyen's claims, and the County contends the trial court erred in awarding attorney's fees and in calculating prejudgment interest. We affirm in part, reverse and render in part, and remand in part.

UNDERLYING FACTS

From 1991 to 2011, Nguyen was employed with the County in different county offices. Her claims in this suit pertain solely to her employment with the Justices of the Peace for Precinct 8 and Precinct 1.

### *Employment at Precinct 8*

Nguyen initially began working in the County tax office in 1991. She transferred from the tax office to work in the office of the Justice of the Peace for Precinct 8 in 2001, where she worked as a clerk for Justice of the Peace Thurman Bartie (Bartie or Judge Bartie). In 2002, Nguyen and Dana Graham (Graham),

2

another County employee who worked as an associate court administrator, were interviewed by and subpoenaed to testify before the Commission on Judicial Conduct concerning complaints made against Bartie. Bartie then resigned, and former Justice of the Peace Barbara Dorman (Dorman or Judge Dorman) replaced Bartie on an interim basis until a new Justice of the Peace for Precinct 8 could be elected. Tom Gillam (Gillam or Judge Gillam) won the election over several challengers. Gillam began his service as the Justice of the Peace in Precinct 8 in April of 2004.

At trial, Rick Bienvenue (Bienvenue), one of the candidates who lost the election to Gillam, testified that, prior to the election, he overheard Bartie tell an assemblage of the candidates that "[Bartie] thought that the staff that's in the J.P. office really stabbed him in the back[,]"and that "[n]o matter what you should get rid of these people." Bienvenue testified that he was alarmed by what he heard, thinking that if he won the election, he might not have anyone to work with him, and he later spoke with Judge Dorman about his concerns. Graham testified that Bienvenue came to the Precinct 8 office and informed them that "Judge Bartie was on the sidewalk . . . stating that -- to some of the candidates, whoever won, that Penny and Dana had to go." Nguyen testified that after Bienvenue spoke to Judge

3

Dorman, Nguyen was afraid that she might lose her job. Bartie denied making the statement. Judge Gillam testified that he had not heard such a statement, nor did he know that Bienvenue had met with members of the Precinct 8 staff regarding the comments Bartie allegedly made. Bartie and Gillam both testified that they were not friends or political allies.

Gillam stated that although he knew his employees were "at-will," he told his employees (including Nguyen and Graham) that he would not take action against an employee except upon established good cause. Graham also testified that Judge Gillam told the Precinct 8 employees that they need not worry and that their jobs were safe.

According to Graham, on or about the second day after Gillam took office, a copy of Graham's testimony from Bartie's Judicial Conduct Commission hearing was delivered by mail to Gillam. A few weeks later, on or about June 1, 2004, Gillam terminated Graham's employment as chief clerk. Gillam then asked Nguyen to apply to fill the position vacated by Graham, but Gillam hired Antoinette Henry for the position in July 2004. After Graham was terminated by Gillam, Nguyen started keeping a diary of events occurring in Judge Gillam's office.

4

Judge Gillam testified that he observed what he regarded as certain problems with Nguyen's work in his office, and on or about August 26, 2004, he presented Nguyen with a "Disciplinary Memo" outlining various performance deficiencies he had noted. The deficiencies included challenging his decisions in open court, releasing information in contravention to his instructions, making certain errors in her work, and spending an excessive amount of time "in other offices on non job-related issues[.]" The memo also stated that

> [t]his memo is intended to serve as notice to you that your continued employment with Justice Precinct 8 is in jeopardy based on your continued inability/unwillingness to follow directions and meet performance expectations. . . .
> . . . .
> These kinds of errors, challenges to my authority and disrespect will not be tolerated. . . . I believe that you have the ability to work in the manner that I expect. Should any conduct of the type described in this memo reoccur, it will lead to further disciplinary action, up to and including termination of your employment with Justice Precinct 8.

Nguyen testified that she refused to sign the memo because she did not agree with it.

According to the record, on or about September 3, 2004, Nguyen presented a grievance to Cary Erickson (Erickson), Director of Human Resources for the County. Her grievance stated:

5

> I am Vietnamese of origin, American by choice and a citizen by law. I am a friend and former co-worker of Dana Graham. I testified against Thurman Bartie. Tom Gillam got even and fired Dana Graham and replace [sic] her with a black person, and now Gillam is harassing me. He has given a warning letter/memo to me on August 27, 2004, which is undeserved and hurts my career. I am denied breaktime. I have asked Gillam and he refers me to Antoinette Henry. But I have been training her on procedures and policies and she doesn't know about polices or law on breaktime.

On or about September 8, 2004, Nguyen met with Erickson to discuss the matter, and she covertly recorded their conversation.[1] Nguyen told Erickson she thought "the whole thing started when Bartie . . . got suspended[,]" and she also told him she had heard a rumor that Bartie and Gillam had "made a deal . . . to get rid of" Graham and Nguyen because they had testified against Bartie; however, she declined to tell Erickson where she heard that rumor. Erickson testified that, prior to Graham's termination, Graham also told Erickson she thought her job was in jeopardy because of her testimony against Bartie. On October 1, 2004, Gillam wrote a warning letter to Nguyen, advising her that her performance "has to improve." Nguyen's husband, who worked for County Commissioner Mark Domingue (Domingue), told Domingue that his wife was worried about her job.

---

[1]Nguyen testified that the tape recording was destroyed during Hurricane Ike. But she made a transcript of the recording before it was destroyed, and a transcript of the recording was entered into evidence at trial.

Domingue testified that he worked with Human Resources "to try to save [Nguyen's] job and get her moved to a different department." Erickson testified that he wrote Nguyen a letter on October 19, 2004, regarding a job offer to work in Mosquito Control. That same day, Nguyen gave Gillam a resignation letter, in which she wrote:

> Cary Erickson had stated that you are likely to fire me in the near future because of the harassment which I have suffered as a result of Judge Bartie. I resign to save my career and reputation. I understand that my last official day is Friday, October 22, 2004.

### *Employment at Mosquito Control and Precinct 1*

Nguyen started working for Mosquito Control on October 20, 2004, at a reduced salary. Her starting salary at Mosquito Control was $3,617 less per year than what she made while working at Precinct 8. Nguyen worked for Mosquito Control for about two years, from October of 2004 until sometime in 2006, when Graham told her there was a job opening to work for Justice of the Peace Vi McGinnis (McGinnis or Judge McGinnis) in Precinct 1, where Graham was already working. Nguyen interviewed and she was hired to work as a clerk in Precinct 1.

Nguyen testified that she had a good experience working in Judge McGinnis's office from 2006 through 2009. However, near the end of 2009,

7

Annette Reedy (Reedy), McGinnis's chief clerk, noticed an envelope on Nguyen's credenza, which was pre-stamped, and it had Nguyen's own address label placed over the Court's return address. The envelope was addressed to Nguyen's brother in Hawaii. Reedy made a copy of the envelope, but did nothing further at that time. According to a statement from Reedy that was in Nguyen's personnel file, Reedy did not tell Judge McGinnis about the envelope because at that time Reedy felt everyone in the office had turned against Reedy.

About one year later, Reedy told McGinnis about the envelope Reedy had found on Nguyen's credenza, and McGinnis instructed Reedy to go through Nguyen's desk to see if there were any other pre-stamped envelopes that were being used by Nguyen for Nguyen's personal use. When Reedy looked through Nguyen's desk, Reedy discovered a note from the nurse practitioner with the Jefferson County Employee Health Department, and it appeared that Nguyen had altered the note to create an excused absence slip for Nguyen's son; Reedy also found a fax transmittal sheet indicating Nguyen had faxed the excuse to her son's school in 2007. Nguyen testified that neither Erickson nor McGinnis ever discussed with Nguyen what Reedy found, and Nguyen did not learn about Reedy's statement until a week before the trial.

8

At trial, Nguyen admitted that she used the office pre-stamped envelope because she had run out of envelopes, and she testified that she was just going to "use it until [she] was able to replace it." Nguyen also admitted to having used the nurse practitioner's letterhead to falsify an excuse for her son, and she admitted that she knew it was a felony to do so. Erickson testified that McGinnis raised these issues concerning Nguyen with the County's Human Resources office during the last month or so before McGinnis's term ended.

Nguyen testified that, in October 2010, she was suspended by McGinnis without pay for three days due to a disagreement she had with a part-time co-worker, who was also a "close friend" of Reedy. While suspended, Nguyen received a call from Graham, and Nguyen went to Graham's house. Nguyen learned from Graham that McGinnis had instructed Graham not to talk to Nguyen about what had happened at work. Nguyen also testified that, upon her return from suspension, she admitted to McGinnis that she had lied when she was asked about and denied going to Graham's house. Nguyen and Graham were both suspended.

Judge McGinnis's term ended in December 2010, and Nancy Beaulieu (Beaulieu or Judge Beaulieu) was elected as the Justice of the Peace for Precinct 1. Erickson testified that "Beaulieu chose her own staff" and Nguyen "was just not

rehired." Neither Judge McGinnis nor Judge Beaulieu testified at trial. Nguyen's employment with the County ended in January 2011. Nguyen began working for Orange County in March 2011.

*Nguyen's Lawsuit*

Nguyen filed an Original Petition on June 7, 2006, naming the County, Gillam, and Bartie as defendants. In her Original Petition Nguyen asserted a retaliation claim under 42 U.S.C. § 1983 for what she described as retaliation for the exercise of free speech for reporting violations of Bartie's "repeated acts of misconduct." Nguyen also included what she described as a claim under "the Texas constitution[,]" claiming that the defendants had acted to deprive her of her protected property interest in her employment at Precinct 8. Nguyen's Original Petition described and complained about her employment with Precinct 8, but she did not mention any other County job or Precinct 1. Nguyen's Original Petition also contained the following allegations:

> 52. Jefferson County has made objective representations to the public and its employees that employees exercising protected and/or legal rights will not be retaliated against for exercising those rights. Yet, Jefferson County has retaliated and/or permitted the retaliation against Ms. Nguyen for exercising those recognized rights.
> 53. The County should be estopped from denying its promised protections to Nguyen.

10

54. Further, the County's representations constitute constitutionally recognized and protected property and/or liberty interests to Ms. Nguyen.

55. Nguyen has been deprived of those protected interests without due course/process of law.

56. Nguyen has been subjected to unconstitutional and illegal retaliation and deprivation of protected interests . . . .

Seven years later, on June 4, 2013, Nguyen's case went to trial before a jury. On the second day of the jury trial, counsel for the County advised the trial court that late the previous evening, he received by fax a copy of a document styled as Nguyen's "First Amended Petition." The County advised the court that it "appear[ed] to add a cause of action based on the 14th Amendment [of the U.S. Constitution] that was not pled in this case for the nine [sic] years this case has been pending[.]" The County objected to the untimely amended petition, claimed surprise, and argued that Nguyen had not obtained leave of court to file the amended pleading. Nguyen responded that the Texas Rules permit trial amendments, that she had already pleaded a claim for due process under the Texas Constitution, and that the only difference between a due process claim under the U.S. and Texas Constitution is the remedy available. According to the reporter's record, the trial judge allowed Nguyen to proceed with the amended pleading; however, the First Amended Petition does not appear in the clerk's record on

11

appeal. Nevertheless, the record does reflect that the defendants then filed a First Supplemental Answer, asserting that the claims in Nguyen's First Amended Petition were barred by the applicable statutes of limitations. On the fifth day of trial, the parties entered into a stipulation regarding Gillam, and Nguyen dismissed her claims against Gillam with prejudice.[2] The stipulation was read to the jury and filed the same day, and provided as follows:

> At all times material hereto Tom Gillam, serving as Justice of the Peace Precinct 8 for Jefferson County is and has been respectively the final authority and or "policymaker" for Jefferson County in the matters of personnel decisions in the Justice of the Peace Precinct 8, including the decisions to employ persons to serve in budgeted positions, terminate the employment of persons employed by the Justice of the Peace Precinct 8 office, promotion and demotion of persons employed by the Justice of the Peace Precinct 8; specifically as applied to Penny Nguyen.
> []Plaintiff dismisses with prejudice all claims against Tom Gillam, individually.

After the parties rested, and prior to the charge being submitted to the jury, the County made three objections to the proposed jury charge: (1) the County argued that issues under the Fourteenth Amendment were not brought until the trial

---

[2]The stipulation does not include a reference to defendant Bartie, and the record includes no other pleading dismissing Bartie from the suit. However, no issue regarding Bartie was submitted to the jury; no judgment was entered against Bartie; and none of the parties raise an issue regarding Bartie's liability, if any, on appeal.

12

began, the pleading asserting claims under the Fourteenth Amendment had not been admitted into the record, and there were no pleadings to support submission of those claims to the jury; (2) the County argued that the claims relating to Nguyen's employment with Precinct 1 were based on events that took place more than two years earlier, were not raised until the First Amended Petition, and were outside the applicable statute of limitations; and (3) the County argued that no evidence supported the submission of mental anguish damages.[3] The court overruled the County's objections.

The case was submitted to the jury with separate subparts for each issue requiring the jury to answer separately for Precinct 8 and Precinct 1 pertaining to the alleged adverse employment actions and First Amendment retaliation claim, and the alleged due process claim. Instructions were given regarding the liability issues and the damage issues. The instructions pertaining to the liability issues were as follows:

### INSTRUCTIONS

Penny Nguyen claims that the Defendant(s), while acting "under color of state law," intentionally deprived her of rights secured to her under the Constitution of the United States of America[.]

---

[3]The record does not include a proposed jury charge from either party.

Penny Nguyen claims that while the Defendant(s) were acting under color of authority of state law and/or Jefferson County, Texas intentionally violated Penny Nguyen's Constitutional rights when they allegedly took adverse employment actions against her. Penny Nguyen claims that her exercise of her right to free speech under the First Amendment to the Constitution of the United States, and her rights to due process under the Fourteenth Amendment of the Constitution of the United States have been infringed.

. . . .

You are instructed as a matter of law that Penny Nguyen exercised activities protected by the First Amendment to the Constitution of the United States when;
1. She testified in 2002 against Thurman Bartie, before the Judicial Commission pursuant to subpoena;
2. When she was represented by an attorney in matters of her employment by Jefferson County;
3. When she associated with Dana Graham outside the workplace.

Penny Nguyen must prove by a preponderance of the evidence that the exercise(s) of protected activities were substantial or motivating factors [of] any adverse employment actions taken against her in order to prove she was deprived of rights secured to her by the Constitution of the United States.

Further, Penny Nguyen must prove by a preponderance of the evidence that but for her exercise of protected activities Defendant(s) would not have taken adverse employment actions against Penny Nguyen.

You are instructed that an "adverse employment action," in context of [a] public employee's First Amendment retaliation action is one that a reasonable employee would find to be materially adverse, i.e., the employer's actions must be harmful to the point that they

14

could well dissuade a reasonable worker from making or supporting a charge of discrimination under federal law. You are instructed as a matter of law that constructive discharge constitutes an adverse employment action.

Penny Nguyen claims that while employed with Judge Tom Gillam she was subjected to adverse employment actions, including constructive discharge from her employment in the Office of the Peace Precinct 8, Jefferson County. An adverse employment action includes constructive discharge. To prove her claim of constructive discharge, Penny Nguyen must show that the Defendants['] illegal acts made or allowed working conditions to become so difficult that a reasonable person in the [sic] Penny Nguyen's position would feel compelled to resign. Demotion or reassignment to a job with lower pay or lower status may, depending on the aggravating nature of the individual facts and circumstances, establish the claims of constructive discharge. An employee does not need to prove an employer subjectively intended to force the employee to resign.

A constitutionally "protected property interest" arises from state law, or agreements between the parties, such as Judge Tom Gillam's specific agreement with his employees that he would not subject them to disciplinary actions except upon established good cause.

Penny Nguyen possessed a protected property interest in her employment by Jefferson County in that she had a reasonable basis to believe that she would not be subjected to adverse employment actions except for established good cause.

When a person possesses a Constitutionally protected "property interest," she cannot be deprived of that interest except upon due process of law.

Due process requires fair notice of reasons for the proposed deprivation and a meaningful hearing before a reasonably fair and impartial officer. Due process in the workplace does not require a

trial, only fundamentally fair notice of the charges and [an] opportunity to rebut those charges.

Due Process also requires that a governmental employer's investigation of the charges be reasonably accurate and complete.

The specific elements of due process include the following:
1. Reasonably advance notice of the charges including the basis for the charge and evidence supporting the proposed deprivation.
2. A meaningful and fair hearing where the employee is able to be represented, confront witnesses against her, and present evidence in her own favor.
3. To a fair and un-partial decision maker.

The first question asked the jury to answer "yes" or "no" to the following: "Do you find by a preponderance of the evidence that Penny Nguyen was subjected to adverse employment actions while employed as a clerk in Judge Tom Gillam's Precinct 8 Office, in violation of rights secured to her by the Constitution of the United States[?]" The second question asked the jury to answer "yes" or "no" to the following: "Do you find by a preponderance of the evidence that Penny Nguyen's exercise of protected activity was a substantial or motivating factor for the adverse employment actions to which she was subjected as a clerk in Judge Tom Gillam's Precinct 8 Office[?]" Question 2 was not conditioned upon an affirmative response to Question 1. Questions 3 and 4 asked similarly-framed questions regarding Precinct 1, and question 4 was not conditioned on an

16

affirmative finding to question 3. Question 5 then asked the jury: "Do you find by a preponderance of the evidence that Penny Nguyen was denied elements of due process before she was subjected to employee discipline by Jefferson County in: A. Precinct 8 . . . B. Precinct 1." Question 6 asked the jury to assess damages; and it had separate blanks for each precinct, including subparts for mental anguish in the past; mental anguish in the future; loss of earnings in the past; loss of earnings in the future; loss of retirement, health, medical and life insurance in the past; and loss of retirement, health, medical and life insurance in the future.

The jury answered "yes" to Questions 1 through 5, finding liability against the County as to both Precinct 8 and Precinct 1. The jury awarded damages to Nguyen in the amount of $75,000 as to Precinct 8 and $75,000 as to Precinct 1 for mental anguish in the past, but the jury awarded zero damages for mental anguish in the future; the jury awarded damages to Nguyen in the amount of $75,000 as to Precinct 8 and $75,000 as to Precinct 1 for past loss of earnings, but the jury awarded zero damages for future loss of earnings; and the jury awarded damages to Nguyen in the amount of $50,000 as to Precinct 8 and $50,000 as to Precinct 1 for past loss of retirement, health, medical and life insurance benefits, but the jury

17

awarded zero damages for future loss of retirement, health, medical and life insurance benefits. The unanimous jury verdict was then filed with the trial court.

On the same date the jury returned its verdict, Nguyen filed a Motion for Leave to File Trial Amendment, which the court granted. Nguyen then filed her Second Amended Petition, in which she asserted claims against Precinct 8 and Precinct 1. In particular, regarding her claims against Precinct 1, she claimed that she was terminated from Precinct 1 in retaliation for her exercise of protected speech and she alleged that her "due process rights were violated when she was terminated from . . . Precinct 1."

On August 21, 2013, Nguyen filed a Motion for Entry of Final Judgment Subject to Award of Attorney's Fees and a Motion for Approval of Attorney's Fees. On August 23, 2013, the County filed a Motion for Judgment Non Obstante Veredicto, wherein the County argued that there is no evidence to support the jury's answers finding liability against the County and awarding damages; all the claims and damage findings concerning Precinct 1 are "barred by limitations"; and jury question 5A "does not properly reflect the law that the Plaintiff was an at-will employee[.]" The County did not address Nguyen's motion for attorney's fees in its motion for JNOV.

18

The Court entered a Final Judgment for Nguyen awarding a total of $620,531.28, which included actual damages of $400,000 together with prejudgment interest. The trial court's judgment states that it calculated the prejudgment interest at 5% from October 19, 2004 to the date of the judgment. The judgment also awarded Nguyen "[r]easonable and necessary attorney's fees in the amount of $72,300.00[,]" post judgment interest, and court costs. The County timely filed its notice of appeal.

SUMMARY OF ISSUES ON APPEAL

The County articulates fourteen issues on appeal and contends that: (1) Nguyen's causes of action and the submission in the jury charge as to the alleged due process violations under the U.S. Constitution are barred by the two-year statute of limitations as to both Precincts 1 and 8; (2) all of Nguyen's causes of action and the submission in the jury charge of any issues as to her employment in Precinct 1 are barred by the two-year statute of limitations; (3) Nguyen's causes of action and the submission to the jury as to her employment in Precinct 1 are barred by her being terminated from continuing into the term of a newly-elected official on the basis of either or both good cause or her at-will employment, and there is no evidence or insufficient evidence to support these causes of action; (4) Nguyen has

19

no cause of action for constructive discharge as a basis for an "adverse employment action" because her status was always that of an at-will employee, she failed to obtain any fact finding that there was any constructive discharge, and she was not actually discharged from Precinct 8, but only voluntarily transferred to a different county department; (5) Nguyen's claims for damages for retirement benefits and the submission of jury question 6(d) are barred by her failure to prove she was entitled to such benefits because she was ineligible for retirement, and that there is no evidence or insufficient evidence to support any such damages; (6) Nguyen is not entitled to mental anguish damages because she failed to prove any physical injury or sufficient impact, and that there is no evidence or insufficient evidence for such damages; (7) there is no evidence or insufficient evidence to support the jury's finding in jury question 6(c) concerning Nguyen's alleged loss of earnings; (8) Nguyen's claims that pertain to an alleged violation of a property or liberty interest are not viable because Nguyen was an "at-will" employee, and there is insufficient evidence or no evidence to support the jury's finding; (9) Nguyen has failed to present any evidence or there is insufficient evidence of any "policy" of Jefferson County that caused the alleged adverse employment actions, Nguyen has waived her cause of action by failing to obtain a jury finding of a

policy, and the parties' stipulation that Gillam is the policymaker for Jefferson County in Precinct 8 does not identify the offending policy and does not apply to the one-half of Nguyen's damages that would be attributable to Precinct 1; (10) money damages are not allowed for violations of the Texas Constitution; (11) there is no evidence or insufficient evidence that Nguyen's "at-will" status was ever altered or enhanced; (12) there is no evidence or insufficient evidence to support the jury's affirmative response to each of the jury questions; (13) it was error for the trial court to fail to grant some or all of Appellant's Motion for JNOV; and (14) there is no evidence and no fact finding in the record to support the judgment that Jefferson County is liable for Nguyen's attorney's fees and that the trial court erred in its calculation of prejudgment interest.

## PRESERVATION OF ERROR

To preserve error for appeal, the movant must make a timely request to the trial court stating the specific grounds for the ruling desired, if the grounds are not obvious from the context, and the movant must obtain a ruling on the requested relief. *See* Tex. R. App. P. 33.1. As a general rule, non-jurisdictional complaints will be waived unless the party includes the complaints in a timely objection. *See* Tex. R. Civ. P. 274; *Wackenhut Corr. Corp. v. De La Rosa*, 305 S.W.3d 594, 616

21

(Tex. App.—Corpus Christi 2009, no pet.), *overruled on other grounds by Zorrilla v. Aypco Constr. II, LLC*, No. 14-0067, 2015 Tex. LEXIS 555, at \*\* 27-35 (Tex. June 12, 2015).

A motion for new trial is a prerequisite to a civil complaint challenging the factual sufficiency of the evidence supporting a jury finding. Tex. R. Civ. P. 324(b)(2). The motion for new trial must state the factual sufficiency complaints with sufficient specificity to make the trial court aware of the complaints, unless the specific grounds are otherwise apparent from the context. *See*, *e.g.*, *Halim v. Ramchandani*, 203 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also* Tex. R. App. P. 33.1(a)(1)(A). Challenges to the legal sufficiency of the evidence are either "no evidence" challenges or "matter of law" challenges, depending on which party bore the burden of proof at trial. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex. App.—Amarillo 1988, writ denied). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 318 S.W.3d 194, 215 (Tex. 2011). A no-evidence point of error is preserved for appellate review if the

22

appellant raised the issue through one of the following: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict (JNOV); (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991).

In a legal sufficiency review, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id*. "A legal sufficiency challenge will be sustained when the record confirms either: (a) complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact." *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (citing *Keller*, 168 S.W.3d at 819).

Objections to a jury charge should be made before the charge is read to the jury. *See* Tex. R. Civ. P. 272; *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873

(Tex. 1973) (as a general rule, the failure to object before the charge is read to the jury waives the complaint on appeal). Where there are no objections to the jury charge, we will measure the legal sufficiency of the evidence by the charge as submitted. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005) (citing to *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001), *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000), and *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)).

TITLE 42 U.S.C. § 1983

Section 1983 provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. We apply federal substantive law and Texas state procedural law when reviewing a claim brought under a federal statute. *In re Global Sante Fe Corp.*, 275 S.W.3d 477, 485 (Tex. 2008) (holding that when a state court hears a claim brought under a federal statute, the state court follows state procedural law and federal substantive law); *Leo v. Trevino*, 285 S.W.3d 470, 478 (Tex. App.—Corpus Christi 2006, no pet.) (federal substantive law applied when the state court

reviews a claim brought under 42 U.S.C. § 1983). Section 1983 "is not a source of substantive rights; instead it creates a cause of action against state actors for enforcement of those rights." *Escobar v. Harris Cnty.*, 442 S.W.3d 621, 629 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989), and *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)).[4]

Although a State is not a "person" under section 1983, local governing bodies such as a county may be sued under the statute. *See Howlett v. Rose*, 496 U.S. 356, 375 (1990); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)

---

[4]Sovereign immunity does not bar a section 1983 claim against a county. *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 109 (Tex. App.—Dallas 2006, pet. denied) ("The County has no sovereign immunity from a section 1983 claim.") (citing *Howlett v. Rose*, 496 U.S. 356, 375 (1990)). Therefore, a party who brings a section 1983 claim against a county need not establish a waiver of sovereign immunity. *Gonzales*, 183 S.W.3d at 109. Nevertheless, qualified immunity may be an affirmative defense to a section 1983 claim. *Escobar v. Harris Cnty*, 442 S.W.3d 621, 629 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In this matter, the County and Defendant Tom Gillam each included a "Sovereign/Governmental Immunity" and "Official and/or Qualified Immunity" defense in their Original Answer. However, the County does not include any issue on appeal regarding immunity and we find no subject matter jurisdictional issue exists in this matter. We also note that all claims against Gillam were dismissed and Gillam is not a party to this appeal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (qualified immunity may extend to governmental officials performing discretionary functions "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

("Local governing bodies . . . therefore, can be sued directly under § 1983 . . . ."); *Crane v. Texas*, 759 F.2d 412, 420-21 (5th Cir. 1985) (rejecting a claim that a county was not a "person" for purposes of a claim under 42 U.S.C. § 1983). However, a local government or county cannot be held liable under section 1983 solely on a theory of respondeat superior, merely because it employs a tortfeasor. *See Monell*, 426 U.S. at 691; *Cnty. of El Paso v. Dorado*, 180 S.W.3d 854 (Tex. App.—El Paso 2005, pet. denied). The plaintiff who files a section 1983 claim against a county must allege that she has been deprived of a federally protected right, or the county is not displaced of its sovereign immunity. *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 110 (Tex. App.—Dallas 2006, pet. denied). Furthermore, the plaintiff must prove by a preponderance of the evidence that her deprivation of the constitutionally protected right was the result of an official policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *See Monell*, 436 U.S. at 694. A party need not exhaust state judicial or administrative remedies as a prerequisite to bringing an action under section 1983. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982).

Section 1983 provides a remedy for violations of federal constitutional and federal statutory rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (Section 1983 is "a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes . . . ."); *Carbonell v. La. Dep't of Health & Human Res.*, 772 F.2d 185, 188 (5th Cir. 1985) (Section 1983 provides "a remedy for the vindication of other federal statutory or constitutional rights."); *Gonzales*, 183 S.W.3d at 110 (to make a section 1983 claim, plaintiff must plead a cause of action implicating deprivation of a federal right); *City of Fort Worth v. Robles*, 51 S.W.3d 436, 433 (Tex. App.—Fort Worth 2001, pet. denied) ("section 1983 . . . provides a remedy for federal rights established elsewhere."). For example, an employee might assert a section 1983 claim for deprivation of one of the rights afforded in the Bill of Rights or as protected under the substantive component of federal due process. However, an employee may not use section 1983 to bring a claim for a violation of the Texas Constitution. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1001 n.3 (N.D. Tex. 1996).

An employee's at-will status does not bar a claim under section 1983 for First Amendment retaliation. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997) ("An at-will public employee may not be discharged for

exercising his First Amendment right to freedom of expression."); *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 757-58 (5th Cir. 1986) (A public employee may recover "for resulting injuries if he was reassigned in retaliation for protected speech even though he does not have a protected property interest in his former position.") (citing *Mt. Healthy Cnty. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *cf. Perry v. Sindermann*, 408 U.S. 593, 597-98 (1972) (state college teacher's lack of a contractual or tenure "right" to re-employment is immaterial to his free speech claim). Nevertheless, the question of whether or not an employee has a property right in continued employment is determined with reference to state law. *White v. S. Park Indep. Sch. Dist.*, 693 F.2d 1163, 1166 (5th Cir. 1982); *Thomas v. Bd. of Trs. of Galveston Indep. Sch. Dist.*, 515 F. Supp. 280, 285-87 (S.D. Tex. 1981).

"'For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all.'" *Sawyer v. E.I. du Pont de Nemours & Co.*, 430 S.W.3d 396, 399 (Tex. 2014) (quoting *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)). Therefore, an at-will employee does

not have a property right or interest in his or her continued employment. *See Greenway v. Roccaforte*, No. 09-08-00529-CV, 2009 Tex. App. LEXIS 8290, at **13-15 (Tex. App.—Beaumont Oct. 29, 2009, pet. denied) (mem. op.); *Cote v. Rivera*, 894 S.W.2d 536, 541 (Tex. App.—Austin 1995, no writ). General comments or statements that an employee will not be terminated except for "good cause" do not override the at-will employment relationship, nor does it establish a vested property interest in continued employment when there is no agreement on what the terms encompass. *See Brown*, 965 S.W.2d at 502-03 (an employer's general assurances do not modify at-will employment absent "'definite and specific promises by the employer sufficient to substantively restrict the reasons for termination.'") (quoting *Hayes v. Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995)). However, at-will employment may be modified by specific agreement or through civil service systems. *See Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 348 (Tex. 2007). The employee bears the burden to put forth evidence to overcome the presumption that employment is at-will. *See Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("It is the employee's burden to prove that the presumed at-will relationship was altered."); *Dorado*, 180 S.W.3d at 867 (stating that a plaintiff

bringing a claim under 42 U.S.C. § 1983 must prove deprivation of a constitutional or federal right).

STATUTE OF LIMITATIONS

In its first issue on appeal, the County argues that Nguyen's due process claims, if any, are barred by the applicable two-year statute of limitation as to both Precinct 8 and Precinct 1. In its second issue, the County argues that all of Nguyen's claims pertaining to Precinct 1 are barred by the applicable two-year statute of limitations.

Nguyen argues that Nguyen's allegations concerning Precinct 1 are "mere pleading amendments" that do not implicate the statute of limitations, that limitations is an affirmative defense requiring pleading and proof for which the County had the burden of proof, and that the County failed to move for a judgment on this issue.

The County first objected to Nguyen's amended petition and the addition of her claims being "time-barred" on the second day of the trial, when the County alerted the trial court that it had received an amended petition adding a claim for events that related to Precinct 1 and adding a federal due process allegation. The County filed Defendants' First Supplemental Answer wherein it asserted that

30

[t]he claims asserted by [Nguyen] for the first time in her First Amended Petition are barred by the two-year statute of limitations as a matter of law. The allegations concern events that occurred in October of 2010 up to January of 2011, when she was terminated by Hon. Nancy Beaulieu, Justice of the Peace, Precinct 1. These claims were asserted for the first time on June 3, 2013, more than two years after the alleged events."

The County also objected to the jury charge on the basis of the statute of limitations, and it asserted that a portion of Nguyen's claims were barred by the statute of limitations in the County's post-trial motion for a JNOV.

A federal claim for a violation of civil rights is governed by the state statute of limitations that is most analogous to the federal claim being raised. *See Upton Cnty. v. Brown*, 960 S.W.2d 808, 815 (Tex. App.—El Paso 1997, no pet.). As a general rule, "constitutional claims that arise in Texas under the Texas Constitution and the United States Constitution, including section 1983 claims, are burdened by Texas's two-year tort statute of limitations." *Nickerson v. Tex. Dep't of Crim. Justice-Institutional Div.*, No. 09-10-00091-CV, 2011 Tex. App. LEXIS 5341, at *4 (Tex. App.—Beaumont July 14, 2011, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2010)); *see also Wallace v. Kato*, 549 U.S. 384, 387-88 (2007) (holding that the statute of limitations for a section 1983 claim is governed by the personal injury tort statute of limitations of

the state in which the cause of action arose); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (The statute of limitations for a section 1983 claim is determined by the general statute of limitations for personal injury claims in the forum state.); *Pete v. Metcalfe*, 8 F.3d 214, 216-17 (5th Cir. 1993) (The Texas two-year statute of limitations applies to a claim under section 1983 for alleged denial of "liberty and property without due process of law[.]").

Unlike the selection of the applicable statute of limitations, which is determined by reference to state law, the accrual of a section 1983 claim is a question of federal law. *Wallace*, 549 U.S. at 388; *Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983); *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980); *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 454 (Tex. App.—Waco 2010, pet. denied). A cause of action accrues when "'the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Brown v. NationsBank Corp.*, 188 F.3d 579, 589-90 (5th Cir. 1999) (citing *Moore v. McDonald*, 30 F.3d 616, 620-21 (5th Cir. 1994)).

Assertion of a limitations defense is an affirmative defense. *See* Tex. R. Civ. P. 94. The party who asserts a limitations defense bears the burden to plead, prove, and secure findings to support the defense. *See Woods v. William M. Mercer, Inc.*,

769 S.W.2d 515, 517 (Tex. 1988) (the party who asserts limitations as an affirmative defense bears the burden of proof). This burden includes establishing when the plaintiff's cause of action accrued. *See Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.).

When, as here, the jury was not asked to determine when the cause of action accrued for purposes of supporting a limitations defense, the defense is waived unless the evidence conclusively established the date of accrual. *See* Tex. R. Civ. P. 279; *Woods*, 769 S.W.2d at 517; *Prestige Ford*, 336 S.W.3d at 836. An accrual date is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the facts. *See Holland v. Lovelace*, 352 S.W.3d 777, 791 (Tex. App.—Dallas, 2011, pet. denied).

It is undisputed that Nguyen stopped working at Precinct 8 on October 19, 2004, and that she filed her Original Petition on June 7, 2006. Nguyen left Precinct 8 in 2004 and worked for Mosquito Control for about two years. Nguyen then began working at Precinct 1 in 2006, where she remained until January of 2011, when the new Justice of the Peace took office and then chose not to keep Nguyen as part of the staff. In Nguyen's Second Amended Original Petition she contends that the County terminated her employment at Precinct 1 as part of an on-going

effort to retaliate against her for testifying against Bartie.

After examining the record before us, we conclude that the evidence at trial conclusively established the accrual date for Nguyen's claims, if any, as to Precinct 8 and as to Precinct 1. The accrual date for her claims for adverse employment actions at Precinct 8 would have been no later than October 19, 2004, when Nguyen left Precinct 8 to go to Mosquito Control. And, the accrual date for Nguyen's claims, if any, as to Precinct 1 would have been no later than January 2011, when she left the employment of Precinct 1. According to the record, Nguyen did not raise any allegation or complaint about Precinct 1 until June 3, 2013, the first day of the trial, when she sent a copy of an amended petition to the County by fax. That pleading is not in the record, and Nguyen admits in her brief it must not have been filed. But the reporter's record indicates the pleading was discussed on the record, and the trial court overruled the County's objections to what the County described as a "late-filed" pleading, and the County's First Supplemental Answer specifically references the First Amended Petition. On June 13, 2013, the day of the jury's verdict, Nguyen also obtained leave of court to file and filed her Second Amended Original Petition. In the Second Amended Petition, she included a claim arising from her termination from Precinct 8, and a claim

34

regarding her employment at Precinct 1. She also added language in her Second Amended Petition describing a "due process" claim under the federal constitution pertaining to Precinct 8.

In appropriate circumstances, the relation-back doctrine may be available to prevent a newly added cause of action asserted in an amended pleading from being time-barred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West 2015). The relation-back doctrine states that:

> [i]f a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

*Id.*

We must examine Nguyen's Original Petition and compare it to her Second Amended Petition to determine if the newly added claims relate back. Nguyen's Original Petition was filed in June 2006; therein, Nguyen asserted that all of her claims against the County and the other defendants pertained to her employment with Precinct 8, which ended in October 2004, when she transferred from her employment with Precinct 8 to another "sector of the county infrastructure[.]"

35

Nguyen further alleged that Precinct 8 engaged in racial discrimination against her and retaliated against her for her protected speech when she testified about Judge Bartie in 2002. Nguyen did not begin working in Precinct 1 until 2006, and her employment with Precinct 1 then ended in January 2011.

We conclude that Nguyen's claims relating to her employment with Precinct 1 as stated in her Second Amended Petition are "new, distinct, or different" claims and are not saved by the relation-back doctrine. Nguyen did not file her claims pertaining to Precinct 1 until well after the two-year statute of limitations expired. Nguyen's claims arising out of her employment with Precinct 1 are time-barred. However, to the extent Nguyen's Second Amended Petition alleges a section 1983 "due process" claim under the Federal Constitution arising from Nguyen's employment in Precinct 8, as compared to one arising under the Texas Constitution, we find that such claims as to Precinct 8 arise from the same alleged transactions and occurrences as the claim she asserted in her Original Petition, and the relation-back doctrine would apply to prevent the statute of limitations from barring her claims, if any, concerning Precinct 8.

We overrule issue one as it applies to Nguyen's employment with Precinct 8; we sustain issue one as it applies to Nguyen's employment with Precinct 1. We

also sustain issue two because Nguyen's claims arising out of her employment with Precinct 1 are time-barred by the two-year statute of limitations. The County's third issue pertains solely to Nguyen's employment with Precinct 1. Because we find Nguyen's claims as to Precinct 1 are time-barred, we need not address her third issue. *See* Tex. R. App. P. 47.1 (requiring the appellate court to issue written opinions that are as brief as practicable but that address all issues necessary to a final disposition of the case being appealed).

## EMPLOYMENT AT WILL

Many of the County's issues on appeal place significant emphasis on Nguyen's status as an "at-will" employee. The County contends that: Nguyen put forth legally insufficient evidence to overcome the presumption of employment at-will; Nguyen's claim that the County violated her "property interest" in continued employment is precluded by her status as an "at-will" employee; Nguyen has no cause of action for constructive discharge as a basis for an "adverse employment action" because her status was always that of an "at-will" employee, she failed to obtain any fact finding that there was any constructive discharge, and she was not actually discharged from Precinct 8, but only voluntarily transferred to a different county department; and there is no evidence or insufficient evidence that Nguyen's

"at-will" status was ever altered or enhanced. The County also argues that because Nguyen was an "at-will" employee she had no viable property or liberty interest in continued employment and that the jury's affirmative finding to jury issue five was not supported by the evidence.

In this case, the jury charge included the following instruction:

> A constitutionally "protected property interest" arises from state law, or agreements between the parties, such as Judge Tom Gillam's specific agreement with his employees that he would not subject them to disciplinary actions except upon established good cause.

> Penny Nguyen possessed a protected property interest in her employment by Jefferson County in that she had a reasonable basis to believe that she would not be subjected to adverse employment actions except for established good cause.

Nguyen argues that she was "not required to present evidence to support her property interest and the due process right that accompanies it because the County consented to allow the jury to be instructed that she had just such a right." As we have previously noted, it is the court's charge by which we measure the legal sufficiency of the evidence when the opposing party fails to object to the charge, even if the jury charge misstates the law.[5] *See Osterberg*, 12 S.W.3d at 55.

---

[5]The trial court's instruction misstates Texas law governing at-will employees, because under Texas law:

Because the County failed to object to the instruction, it cannot complain for the first time on appeal that the charge improperly instructed the jury that Nguyen had a "protected property interest" in continued employment. *See* Tex. R. Civ. P. 272 (objections to a jury charge should be made before the charge is read to the jury); *Mo. Pac. R.R. Co.*, 501 S.W.2d at 873 (as a general rule, the failure to object before the charge is read to the jury waives the complaint on appeal).

Nevertheless, even assuming that the County had preserved its arguments, and further assuming that Nguyen was an "at-will" employee and that her status was not altered, her "at-will" status would not control whether she had the right to assert a claim under section 1983 for First Amendment retaliation. *See Jett*, 798

---

[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all. . . . For [a binding] contract [of employment] to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent. Neither do statements that an employee will be discharged only for "good reason" or "good cause" when there is no agreement on what those terms encompass. Without such agreement the employee cannot reasonably expect to limit the employer's right to terminate him.

*Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998); *see also Sawyer v. E.I. du Pont de Nemours & Co.*, 430 S.W.3d 396, 399 (Tex. 2014).

F.2d at 757-58 ; *Cabrol*, 106 F.3d at 108; *cf. Perry*, 408 U.S. at 597-98. Therefore, we will examine the challenges made by the County to the jury's verdict and findings pertaining to her First Amendment claims before we review her due process claim.

OFFICIAL POLICY

The basic elements a plaintiff must prove to establish a retaliatory discharge claim under 42 U.S.C. § 1983 include (1) the execution of a policy (2) by a policymaker (3) that causes a constitutional injury. *See Monell*, 436 U.S. at 694. An "official policy" for the purposes of section 1983 liability may be (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent widespread practice of county officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *Thomas v. Galveston Cnty.*, 953 F. Supp. 163, 166 (S.D. Tex. 1997).

The fact that a particular official has discretion to exercise particular functions does not automatically give rise to local government liability based on the exercise of that discretion. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822-24 (1985)). The official must also be responsible for establishing final governmental policy with respect to the particular function or activity before a local government can be held liable. *Id.* at 482-83. The official policy must be "the moving force of the constitutional violation" in order to establish the liability of a governmental body under section 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). Under appropriate circumstances, a single decision by a governmental entity's policymaker may be sufficient to establish a section 1983 claim, even if that decision was not otherwise intended to apply to future situations. *See Pembaur*, 475 U.S. at 480.

The County complains that Nguyen failed to present "any evidence or sufficient evidence" of any County "policy" that caused her alleged injury and that she waived her claim by failing to obtain a jury finding of any such "policy." The jury charge did not include any instructions or definitions pertaining to the existence or execution of a "policy," and the court did not submit a separate

41

question to the jury regarding the existence of a "policy." Under Rule 279, when the jury charge omits an element of a cause of action and the trial court makes no written findings on that element, the omitted element "shall be deemed found by the court in such a manner as to support the judgment." *See* Tex. R. Civ. P. 279; *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228-29 (Tex. 2011). The County did not object to the charge on the basis that it omitted the "policy" element nor did the trial court make findings as to "policy[.]"

At trial, the parties entered into a "Stipulation and Judicial Admission," which read, in relevant part:

> At all times material hereto, Tom Gillam when serving as Justice of the Peace Precinct 8 for Jefferson County is and has been respectively the final authority and or "policymaker" for Jefferson County in the matters of personnel decisions in the Justice of the Peace Precinct 8, including the decisions to employ persons to serve in budgeted positions, terminate the employment of persons employed by the Justice of the Peace Precinct 8 office, promotion and demotion of persons employed by the Justice of the Peace Precinct 8; specifically as applied to Penny Nguyen.

The "Stipulation and Judicial Admission" was signed by attorneys for the County and for Nguyen, was read in court in the presence of the jury, and it was entered into the record. A judicial admission is a formal waiver of proof and may be made by a stipulation of the parties. *See Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d

42

458, 466 (Tex. 1969). A judicial admission is conclusive upon the party making it and bars the admitting party from disputing the matter admitted. *Id.*; *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). According to the stipulation, Gillam was the "final authority and or 'policymaker' for Jefferson County in the matters of personnel decisions in the Justice of the Peace Precinct 8[.]"

Nguyen claims that Gillam made the decision to retaliate against her for testifying against Bartie, associating with Graham, and hiring an attorney. The jury was given the stipulation and also heard evidence of various personnel decisions Gillam made while serving as Justice of the Peace for Precinct 8: he was the person who decided to terminate Graham's employment; he encouraged Nguyen to apply for the position to replace Graham, but he then hired someone else; he issued Nguyen a disciplinary memo; and he issued Nguyen a warning memo. Cary Erickson testified that Judge Gillam made final decisions that were not appealable regarding personnel in Precinct 8, and a letter written by the County's attorney was entered into evidence that read that Gillam, as an elected official, could act "pretty autonomous when it comes to employment decisions." The parties also stipulated that Judge Gillam was the "final authority and or 'policymaker' for Jefferson

43

County in the matters of personnel decisions in the Justice of the Peace Precinct 8." Considering all of the evidence in a light most favorable to the verdict, and judging the evidence based upon the charge that was submitted to the jury, we find that there was more than a scintilla of evidence at trial that Judge Gillam was a policymaker and that he made final personnel decisions for Precinct 8. We further conclude that the evidence is legally sufficient to support a deemed finding that Gillam's conduct and his decisions regarding Nguyen constituted a "policy" by an official with policy-making authority.[6] We overrule the County's ninth issue.

## CONSTRUCTIVE DISCHARGE

Next, the County contends that Nguyen failed to obtain a finding that she was "constructively discharged." The County also argues that Nguyen has shown no evidence or legally insufficient evidence of "intolerable conditions" as required by the Texas Supreme Court in *Baylor University v. Coley*, 221 S.W.3d 599, 603-05 (Tex. 2007) (Constructive discharge of tenured employee requires that the employer "makes conditions so intolerable that a reasonable person in the

---

[6]Nguyen alleged in her Original Petition that she was retaliated against for testifying against Bartie and further that she was retaliated against by Bartie in civil conspiracy with Gillam and members of the County's Human Resources Department in that she was subjected to harassment and a hostile work environment, which eventually forced her to take a lower paying position in Jefferson County.

44

employee's position would have felt compelled to resign."). When an employee submits a letter of resignation, she may still satisfy the adverse employment action element by proving that she was constructively discharged. *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (citing *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)); *Sharp v. City of Houston*, 164 F.3d 923, 933-34 (5th Cir. 1999); *see generally Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 580 (5th Cir. 2003) (noting that the definition of an "adverse employment action" under section 1983 is broader than under Title VII); *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (for purposes of a section 1983 claim, adverse employment actions may include discharges, demotions, refusals to hire, refusals to promote, discipline and reprimands, and transfers (if sufficiently punitive)); *see also Davis v. City of Grapevine*, 188 S.W.3d 748, 766 (Tex. App.—Fort Worth 2006, pet. denied) (as to the employee's TCHRA claim, the employee was able to prove an adverse employment action with proof of constructive discharge).

Under Rule 277, "the court shall, whenever feasible, submit the cause upon broad-form questions." Tex. R. Civ. P. 277. Question 1 as submitted to the jury asked whether Nguyen was subjected to adverse employment actions while

employed in Precinct 8, to which the jury answered "yes." The issue was broadly submitted and required no finding as to any specific adverse employment action. The jury was specifically instructed

> You are instructed that an "adverse employment action," in context of public employee's First Amendment retaliation action is one that a reasonable employee would find to be materially adverse, i.e., the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination under federal law. You are instructed as a matter of law that constructive discharge constitutes an adverse employment action.

> Penny Nguyen claims that while employed with Judge Tom Gillam she was subjected to adverse employment actions, including constructive discharge from her employment in the Office of the Peace Precinct 8, Jefferson County. An adverse employment action includes constructive discharge. To prove her claim of constructive discharge, Penny Nguyen must show that the Defendants['] illegal acts made or allowed working conditions to become so difficult that a reasonable person in the [sic] Penny Nguyen's position would feel compelled to resign. Demotion or reassignment to a job with lower pay or lower status may, depending on the aggravating nature of the individual facts and circumstances, establish the claims of constructive discharge. An employee does not need to prove an employer subjectively intended to force the employee to resign.

The County did not object to this instruction or to jury questions 1 or 2.

The jury heard evidence from one witness who claimed Bartie told Gillam and the other candidates that they should "get rid of" the employees who "stabbed [Bartie] in the back." Shortly after Gillam assumed his office, he received a

46

transcript of Graham's testimony from the Bartie hearing before the State Commission on Judicial Conduct. Gillam then terminated Graham, and Gillam later issued Nguyen a disciplinary memo and a warning memo. Nguyen testified that Gillam questioned her about everything, that Gillam was harassing her, gave her a warning letter, and denied her break time. In her September 8th meeting with Cary Erickson, it was noted that Nguyen felt she was being discriminated against because she is not Black and because she testified against Bartie. Erickson told Nguyen that Gillam had chosen not to participate in the grievance process. In Nguyen's resignation letter, she wrote "Cary Erickson had stated that you are likely to fire me in the near future because of the harassment which I have suffered as a result of Judge Bartie. I resign to save my career and reputation." The jury also heard evidence that Erickson assisted Gillam in writing the reprimands and letters to Nguyen while he was, at the same time, talking to Nguyen about her concerns and telling her "we're here to help." With respect to the jury's finding in response to jury question 1, we conclude that there is more than a scintilla of evidence to support the jury's "yes" finding in response to jury question 1 regarding an "adverse employment action" as defined in the charge.

In its appellate brief, the County also argues that there was no evidence or insufficient evidence of retaliation for Nguyen's exercise of First Amendment rights. Specifically, the County contends that Nguyen failed at trial "to show some evidence that her employment experience was motivated by her exercise of free speech rights[.]" Jury question 2 asked the jury to decide whether Nguyen's exercise of protected speech was a motivating factor for the adverse employment actions in Precinct 8. Consequently, we must examine whether there is legally sufficient evidence to support the answer of the jury to question 2.

With respect to a First Amendment retaliation claim, a party must prove that (1) she suffered an adverse employment decision, (2) she was engaged in protected activity, and (3) that the requisite causal relationship between the two exists. *See Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008).[7] Whether speech or an activity is protected is a question of law. *See Connick v. Myers*, 461 U.S. 138, 148

---

[7]The Fifth Circuit has also articulated the elements for a First Amendment retaliation claim pertaining to speech to include a four-part, rather than simply a three-part, test. "[A] First Amendment retaliation claim in the employment context has four elements: (1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004) (en banc) (incorporating the balancing-of-interests test set forth in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)).

n.7 (1983). Testimony regarding official misconduct may or may not be protected speech for First Amendment purposes. *See Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001).

In this case, the jury charge included the following instruction:

> You are instructed as a matter of law that Penny Nguyen exercised activities protected by the First Amendment to the Constitution of the United States when;
> 1. She testified in 2002 against Thurman Bartie, before the Judicial Commission pursuant to subpoena;
> 2. When she was represented by an attorney in matters of her employment by Jefferson County;
> 3. When she associated with Dana Graham outside the workplace.

The jury was asked to determine whether Nguyen suffered an adverse employment action as a result of exercising her First Amendment right, and that "but for her exercise of protected activities[,] Defendant(s) would not have taken adverse employment actions against Penny Nguyen." The jury answered "yes" as to Precinct 8 and Precinct 1.

We need not decide whether or not Nguyen's testimony at the Commission on Judicial Conduct constituted protected speech under the First Amendment because the County raised no objection at trial to the charge and it fails to raise this

issue on appeal.[8] The County has not challenged the instruction as provided in the charge that Nguyen engaged in activities protected by the First Amendment when she testified against Bartie or when she associated with her attorney or with Graham. *See* Tex. R. App. P. 33.1(a), 38.1(i). We will not reverse on unassigned error. *See Prudential Ins. Co. v. J.R. Franclen, Inc.*, 710 S.W.2d 568, 569 (Tex. 1986) (citing *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983)). Rather, with respect to the County's challenge regarding the legal sufficiency of the evidence to support the jury's finding regarding an adverse employment action, we judge the sufficiency of the evidence against the trial court's charge. *See Osterberg*, 12 S.W.3d at 55; *see also Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005) ("The sufficiency of the evidence must be measured by the jury charge when, as here, there has been no objection to it.").

The evidence presented at trial established that Nguyen testified at Bartie's hearing before the Commission on Judicial Conduct. A witness testified that he

---

[8]Nguyen's allegation regarding her association with her attorney and with Graham outside of the workplace could not have been a motivating factor for the county's transfer of Nguyen to Mosquito Control because the evidence at trial established such events occurred after Nguyen was transferred to Mosquito Control.

heard Bartie tell Justice of the Peace candidates that "the staff that's in the J.P. office really stabbed [Bartie] in the back" and "[n]o matter what you should get rid of these people." According to Graham, Bartie attended Gillam's swearing-in ceremony, where Gillam made remarks about Bartie and the two men embraced. Shortly after Gillam became Justice of the Peace for Precinct 8, a copy of Graham's testimony from the Commission on Judicial Conduct arrived in the mail, and Gillam terminated Graham's employment shortly after he received the transcript. Within a few months, Gillam issued Nguyen a disciplinary memo and a warning letter. Nguyen filed a grievance in September 2004 asserting that "I testified against Thurman Bartie. Tom Gillam got even and fired Dana Graham and replace[d] her with a black person, and now Gillam is harassing me." On October 19, 2004, Nguyen tendered a resignation letter to Gillam that stated "Cary Erickson had stated that you are likely to fire me in the near future because of the harassment which I have suffered as a result of Judge Bartie. I resign to save my career and reputation;" Gillam and Bartie denied that they were friends; Gillam testified that he did not hear Bartie tell the candidates to "get rid of" certain employees; and Gillam stated that it was not his intent to terminate Nguyen. Erickson testified that Nguyen had told him she was "frightened that she was going

51

to be fired . . . because she had testified against Bartie[.]" Erickson also told Nguyen that Gillam had chosen not to participate in the grievance process. Erickson explained that because Judge Gillam did not participate in the grievance process, there was nothing Erickson could do about Nguyen's grievance.

The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). "Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict." *Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Furthermore, we must consider the evidence in the light most favorable to the finding under review and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822.

In light of the charge that was given to the jury and considering the evidence in a light most favorable to the findings of the jury, we conclude that more than a scintilla of evidence supports the jury's finding in response to jury question 2, which pertains to Nguyen's First Amendment retaliation claim under 42 U.S.C. § 1983. The jury reasonably could have rejected Bartie's and Gillam's testimony

and could have concluded that Nguyen's protected speech or her association with Graham were motivating factors for an adverse employment action at Precinct 8, and "but for her exercise of protected activities[,] Defendant(s) would not have taken adverse employment actions against Penny Nguyen."

Ordinarily, when a judgment rests on multiple theories of recovery and one theory is valid, an appellate court need not address other theories. *See George Grubbs Enters., Inc. v. Bien*, 881 S.W.2d 843, 851 n.7 (Tex. App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex. 1995); *see also Jefferson Cnty. v. Davis*, No. 14-13-00663-CV, 2014 Tex. App. LEXIS 9640, at *22 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, pet. filed) (mem. op.); *ACCI Forwarding, Inc. v. Gonzalez Warehouse P'ship*, 341 S.W.3d 58, 68 (Tex. App.—San Antonio 2011, no pet.); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App.—Waco 2000, pet. denied). Because we have determined that the evidence is legally sufficient to support Nguyen's section 1983 First Amendment retaliation claim, we need not address the County's arguments pertaining to jury question 5 and Nguyen's claim for alleged violations of due process, or the effect, if any, of her "at-will" status on such claims. *See* Tex. R. App. P. 47.1. We overrule appellate issues four, eight, and eleven.

TEXAS CONSTITUTIONAL CLAIMS

In its tenth issue, the County contends that Nguyen was not entitled to recover any damages under the Texas Constitution. In her Original Petition and Second Amended Original Petition, Nguyen asserted a cause of action for damages for violations of her due process rights under the Texas Constitution. The County's tenth issue complains that "no private cause of action exists against a governmental entity for money damages relating to the governmental entity's alleged violations of state constitutional rights." In Appellee's brief, "Nguyen agrees that monetary damages are unavailable under the Texas Constitution[,]" but Nguyen contends she asserted other grounds for monetary recovery.

A party may not bring a claim for money damages under the Texas Constitution's due process provision. *See Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 471 (Tex. App.—Fort Worth 1997, writ denied) (op. on reh'g). A due process claim in which a party seeks money damages under the Texas Constitution does not invoke the trial court's jurisdiction. *See Smith*, 338 S.W.3d at 127; *Courtney*, 946 S.W.2d at 468-69.

We agree with the County that no money damages are recoverable for claims asserted under the Texas Constitution. The trial court would have lacked subject-matter jurisdiction over a claim for damages pursuant to an alleged violation of the Texas Constitution or for an alleged "due process violation" under state law. Nevertheless, the record reflects that the jury charge did not include any definitions, instructions, questions, or other references regarding the Texas Constitution, and neither the jury's verdict nor the Final Judgment purport to grant Nguyen relief or an award of damages for an alleged violation of her due process rights, if any, under the Texas Constitution. Therefore, on the record before us we conclude that the County's tenth issue should be overruled because it presents no basis for us to reverse the trial court's judgment. *See* Tex. R. App. P. 44.1(a) (a judgment may not be reversed on appeal unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting its case on appeal).

### SUFFICIENCY OF THE EVIDENCE REGARDING DAMAGES

The County makes "no evidence" challenges in its fifth issue complaining that there is no evidence to support any damages for lost benefits, in its sixth issue complaining that there is no evidence to support the award of mental anguish

damages, in its seventh issue complaining that there is no evidence to support the award of loss of earnings in the past, and in its fourteenth issue arguing there is no evidence to support an award of attorney's fees and that the trial court erred in calculating prejudgment interest.[9]

Compensatory damages are available to the prevailing party in an action under 42 U.S.C. § 1983 where actual injury is established. *See Carey v. Piphus*, 435 U.S. 247, 254-55, 266 (1978); *Henschen v. Houston*, 959 F.2d 584, 588 (5th Cir. 1992). The basic purpose of a damage award under section 1983 is to compensate the individual for injuries that are caused by the deprivation of constitutional rights. *See Memphis Comty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir. 1979); *City of Alamo v. Casas*, 960 S.W.2d 240, 253 (Tex. App.—Corpus Christi 1997, pet. denied). Compensatory damages may include not only out-of-pocket loss and other

---

[9]A party that preserves a legal sufficiency complaint about damages in the trial court may also argue on appeal that an expert's opinion regarding damages is conclusory, and as a result the evidence that supports the jury's damage award is legally insufficient. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). The County does not argue on appeal that the opinions offered by plaintiff's expert, Jeff Davis, were conclusory, nor does the County challenge the methodology or reliability of the expert's opinion. Furthermore, although the County objected at trial to Davis's qualifications to testify concerning the damage calculations and scope of Nguyen's financial losses, the County has not renewed the complaint on appeal.

monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering. *See Stachura*, 477 U.S. at 307. Courts should be guided by the elements of damages allowable in comparable common law tort actions. *See Carey*, 435 U.S. at 257-58. By statute, the prevailing party in a claim under section 1983 may also be awarded attorney's fees. *See* 42 U.S.C. § 1988(b).[10]

For a jury's damage award to survive a legal sufficiency challenge, there must be some evidence that a substantial loss occurred which affords a reasonable basis for estimating the amount of that loss. *See Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 695 (Tex. App.—Austin 1989, no writ). However, the evidence need not correspond to the precise amount found by the jury. *See Pleasant v. Bradford*, 260 S.W.3d 546, 559 (Tex. App.—Austin 2008, pet. denied). When determining damages, the jury has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). When the evidence at the trial supports a range of damages, "an award within that range is an appropriate exercise of the jury's discretion, and a

_____

[10]The relevant language in Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C.] sections . . . 1981-1983, 1985, [and] 1986 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

reviewing court is not permitted to speculate on how the jury actually arrived at its award." *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied).

## 1. Lost Earnings and Benefits

In the County's fifth issue, it argues that there is no evidence or insufficient evidence to support the damages for lost employment benefits in the past (jury question 6(d)). The County argues that Nguyen "had no retirement benefits because she was not eligible to retire[,]" and the submission of the jury question 6(d) is barred by Nguyen's failure to prove "she was entitled" to those damages. In its seventh issue, the County argues that there is no evidence to support an award of damages for lost earnings as awarded by the jury in response to jury question 6(c)). The County did not object to jury questions 6(c) or 6(d) at trial.

The County argues that "Nguyen's economic loss, if any, is limited to her reduction in pay of $3,617 for one year (2005) and none thereafter," because Nguyen's employment was "legitimately" not renewed by the new Judge in Precinct 1, and further because Gillam had the right to legitimately terminate her employment at any time because she was an "at will" employee. The County argues that when Nguyen's employment with Jefferson County ended, she was

58

thirty-nine years old, she had nineteen years of service, and she was not eligible to retire. Nguyen argues that, at the time of trial, she was a "vested member" as defined in the County's retirement plan as a result of her nineteen years of service, even if she was not then eligible for retirement. And as an individual meeting the service requirement, Nguyen contends she had an interest in her retirement annuity that would become fully payable upon reaching retirement age.

Upon proper foundation, an employee may recover lost benefits other than lost wages, such as lost contributions to a retirement program or employer-paid insurance. *See Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1062 (8th Cir. 2002); *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996) (age discrimination claim wherein the court explained "[t]he present value of a plaintiff's interest in a pension plan is recoverable as an element of damages[.]"); *Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1111-14 (8th Cir. 1994) (upholding that part of back pay award representing the amount the employer would have contributed to the employee's 401(k) plan but for the wrongful termination). Courts may require evidence of the value of the benefits or the cost of their replacement before including some of these benefits in the back pay award. *See Rhodes*, 82 F.3d at 620.

Jeff Davis (Davis), a CPA in public practice, testified as an expert for Nguyen. Davis offered testimony as to the value of Nguyen's alleged lost earnings and benefits. According to Davis, Nguyen's salary decreased $3,617 between 2004 and 2005 as a result of moving to a lower-paying position. He testified that, by the end of 2010, her cumulative lost compensation was $23,396, and that Nguyen's lower salary with Orange County in 2011 was $12,831 less than her salary with Jefferson County. His worksheets were submitted into evidence, and they purport to depict a cumulative lost compensation of $63,055 as of 2013. Davis's testimony and worksheets provided the jury with some evidence of past lost earnings.

Davis testified specifically relating to a loss of retirement benefits. Davis explained to the jury that the retirement plans for both Jefferson and Orange County are contributory, that an employee contributes seven percent of her salary to the retirement plan, and that the County also contributes seven percent of the employee's salary during her period of employment. Davis provided a spreadsheet with retirement estimates based on both a lower monthly salary and a higher monthly salary. The retirement estimate based on the lower salary shows "Employee Deposits" of $223,800 and "Employer Financed Credits" of $447,700. The retirement estimate based on the higher salary shows "Employee Deposits" of

$308,300 and "Employer Financed Credits" of $616,700. Davis provided testimony regarding the basis for his estimate of Nguyen's "lost pension benefit." He estimated that Nguyen's annual retirement benefit was reduced by $22,392 per year. When combined with the other evidence presented at trial that established that Nguyen left Precinct 8 in 2004, that she worked for a reduced salary at her subsequent position, we conclude there was more than a scintilla of evidence at trial to support a finding that Nguyen had lost retirement contributions toward her retirement pension in the past.

However, jury question 6(d)(1) asked the jury to determine an amount for "Loss of retirement, health, medical, and life insurance, and other similar fringe benefits in the past" regarding Precinct 8. The charge does not define any of the terms used in the jury question. Rather, there is a general instruction for "Damages Accrued" and for "Calculation of Future Damages." The "Damages Accrued" instruction instructed the jury that "[i]f you find for Penny Nguyen she is entitled to recover an amount that will fairly compensate her for damages she has suffered to date." Compensatory damages under section 1983 are intended to repair the wrong that has been done, including compensation for losses already incurred as well as compensation for the future consequences of the injury, subject to proof

thereof. *See Carey*, 435 U.S. at 258-59 (a plaintiff who establishes liability for deprivation of constitutional rights in a claim under section 1983 is entitled to recover compensatory damages for all injuries suffered as a result thereof); *Dallas v. Cox*, 793 S.W.2d 701, 733-34 (Tex. App.—Dallas 1990, no writ). Therefore, in the context of a section 1983 employment claim, compensatory damages address both back pay and front pay, where "pay" represents both lost wages and lost benefits, such as retirement benefits. *See, e.g.*, Fifth Circuit Pattern Jury Instructions (Civil) § 11.14.A.2 at 208 (2014) ("Back pay is more than salary. It includes fringe benefits such as vacation, sick pay, insurance, and retirement benefits.").

Given the charge and the evidence presented, we conclude that there was more than a scintilla of evidence from which a reasonable jury, in exercise of the jury's discretion, could have determined that Nguyen had lost past contributions to her retirement account by taking a lower-paying job at Mosquito Control. The jury's award is considerably less than the lost pension benefit calculation by Davis, but it is within the range of figures that Davis calculated. We overrule the County's fifth and seventh issues.

## 2. *Mental Anguish Damages*

The County also challenges the jury's damage award for mental anguish damages, stating there is no evidence or insufficient evidence[11] to support Nguyen's claim of damages for mental anguish and the submission of a jury question as to those damages is barred by her failure to prove any physical injury or sufficient impact on her mental or emotional state. The County asserted a general objection in the charge conference to the submission of mental anguish as a category of damages, arguing that there was no evidence to support the submission of the issue to the jury. Nguyen argues that applicable federal case law supports an award of mental anguish damages and that neither medical testimony nor corroborating evidence is required to support a plaintiff's mental anguish damages under a section 1983 claim for constructive or retaliatory discharge.

An award of damages for mental anguish under section 1983 requires a "'specific discernable injury to the claimant's emotional state'" supported by evidence of the nature and extent of such harm. *See Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998) (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90

---

[11]To the extent the County is attempting to raise a factual sufficiency challenge, this point has been waived. Tex. R. Civ. P. 324(b)(2); *see* Tex. R. App. P. 33.1(a)(1)(A); *Halim v. Ramchandani*, 203 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

F.3d 927, 938-40 (5th Cir. 1996)). The Texas Supreme Court outlined the standard of proof for mental anguish damages under state law in *Parkway Company v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). In *Parkway*, the Court stated that to survive a legal sufficiency challenge, the plaintiff must have presented "direct evidence of the nature, duration and severity of their mental anguish, thus establishing a substantial disruption in the [plaintiff's] daily routine." *Id*. at 444. If there is no direct evidence, the Court will apply "traditional 'no evidence' standards to determine whether the record reveals any evidence of a 'high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages." *Id*. (citation omitted). Mere "hurt feelings, anger and frustration" are generally insufficient to support a mental anguish award. *See Brady*, 145 F.3d at 718; *Patterson*, 80 F.3d at 940. Because emotional distress is "'fraught with vagueness and speculation, [and] is easily susceptible to fictitious and trivial claims,'" courts must "'scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony.'" *Brady*, 145 F.3d at 719 (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250-51 (4th Cir. 1996)).

In response to jury question 6(a)(1) the jury awarded Nguyen $75,000 for mental anguish in the past. We evaluate the sufficiency of the evidence by the charge as submitted. *See Romero*, 166 S.W.3d at 221 & n.30. In the charge, "mental anguish" was defined as follows:

> "Mental anguish" as [an] element of damages, implies a relatively high degree of mental pain and distress[;] it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of those, and it includes mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation.

In *Brady*, the Fifth Circuit reviewed whether the evidence supported damages for mental anguish in a claim brought by several county employees under section 1983. *See Brady*, 145 F.3d at 717-20. The plaintiffs' testimony recounted various manifestations of distress, including nervousness, sleeplessness, stress, anxiety, marital problems. *Id.* at 719. The plaintiffs also testified to spending too much time on the couch, being "highly upset," not "accept[ing] it mentally," and experiencing "the worst thing that has ever happened to me[.]" *Id.* The court concluded that the evidence was "vague and conclusory." *Id.*

Similarly, in *Vadie v. Mississippi State University*, 218 F.3d 365, 376-78 (5th Cir. 2000), the evidence did not support the amount of mental anguish damages awarded. Vadie's testimony included:

> [i]t destroyed me. It totally ruined me, and I bec[a]me sick, totally ill, physically, mentally, and everything. I took many doctors, [sic] many pills.
>
> I did not know what to do, where to go, what to say. I did not know whether it was nighttime or daytime, I could not sleep for months at a time. Headache, nausea. Still I am under severe doctor surveillance because of what they have done to me.

*Id.* at 377. Vadie's testimony was sufficient to support a finding of actual injury, but insufficient to support an award of $300,000 for mental anguish because Vadie's claims were only "broad assertions of emotional injury[,]" and therefore the court reduced the award to $10,000. *Id.* at 378.

Nguyen testified that, while working for Judge Gillam in Precinct 8, she was "always nervous," she had headaches, her "stomach would turn[,]" and she felt "[c]onstantly on edge." Nguyen's husband testified that, during her tenure in Precinct 8, she would come home from work crying and "not feeling good[,]" and she lost her appetite. However, Nguyen presented no direct evidence of the duration and severity of her injuries nor did she provide evidence that the alleged complaints caused a substantial disruption of her daily routine. While she testified

66

that she had a rash during her time with Precinct 8 and that she went to the County Health Clinic for treatment of the rash, her medical records from the clinic showed she had a rash prior to the alleged constructive discharge from Precinct 8, and the notes attributed the rash to contact dermatitis, psoriasis, food, and simply "allergic to so many things." Moreover, the medical records established that she was treated for a rash several months prior to her work for or with Gillam, and there was no medical testimony linking the rash with any of the alleged adverse employment actions.

As stated in the charge, "mental anguish" as an element of damage requires "a relatively high degree of mental pain and distress[;] it is more than mere disappointment, anger, resentment, or embarrassment[.]" Even when considering the evidence in a light most favorable to the verdict, we conclude the evidence is legally insufficient to sustain the award of damages for mental anguish in the past. The testimony of Nguyen and her husband falls short of evincing any specific discernable emotional injury and lacks evidence of the nature, duration, and extent of harm and fails to establish a "high degree of mental pain and distress" and causal connection to the alleged adverse employment actions as required. *See Brady*, 145 F.3d at 718. Although the evidence of Nguyen's reported distress

offered at trial reflects "'hurt feelings, anger and frustration [that] are part of life[,]'" the testimony does not support a mental anguish award. *See id.* (quoting *Patterson*, 90 F.3d at 938, 940). Therefore, we sustain the County's sixth issue.

## 3. Attorney's Fees

In its fourteenth issue, the County states: "There is no evidence or fact finding in the record to support the court's judgment that Jefferson County is liable for Nguyen's attorney's fees." In its discussion of the issue, the County argues that the trial court erred when it entered a judgment awarding Nguyen attorney's fees because "Appellant has failed to find anywhere in the record that such attorney's fees were incurred, their amount, their existence or that they are reasonable in any amount, particularly $72,300.00[.]" The County also argues that Nguyen is not entitled to attorney's fees because she should not have been allowed to present additional evidence after the verdict, and further that the record does not include a waiver by Jefferson County of its right to trial by jury on all issues, including attorney's fees.

Nguyen argues that she presented "uncontested evidence" of her attorney's fees by submitting a post-verdict motion for approval of her attorney's fees that was "supported by the affidavit testimony" of her attorney, the County failed to

respond to the motion or to contest the attorney's fee affidavit, and by failing to object to the motion the County has waived its right to complain on appeal. Under 42 U.S.C. § 1988, a prevailing party under a section 1983 claim may receive reasonable attorney's fees as a part of costs awarded. *See* 42 U.S.C. § 1988(b); *Sanchez v. City of Austin*, 774 F.3d 873, 878-79 (5th Cir. 2014) (in a case brought under section 1983, noting that "Section 1988 provides for attorneys' fees to prevailing parties in civil-rights cases[.]"). The party seeking attorney's fees bears the burden to establish its entitlement to an award as well as to document the appropriate hours expended and hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

The determination of attorney's fees under a section 1983 claim has been described as a procedural matter and characterized as costs. *See Hutto v. Finney*, 437 U.S. 678, 693, 695 n.24 (1978) (characterizing an award of attorney's fees under a section 1983 claim as "costs" and not compensatory damages for a constitutional injury); *see also* 42 U.S.C. § 1988(b) (characterizing attorney's fees as costs). Rules that allocate decision-making authority between the judge and jury are "prototypical procedural rules[.]"*Schriro v. Summerlin*, 542 U.S. 348, 354-54 (2004) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996),

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280-81 (1994), and *Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977)). Consequently, we apply Texas state procedural law to our review of the County's issue regarding the award of attorney's fees. *See Global Sante Fe Corp.*, 275 S.W.3d at 485.

Under Texas law, the determination of reasonable and necessary attorney's fees is a question for the jury when it is the trier of fact. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991); *Bill Miller Bar-B-Q Enters. Ltd. v. Gonzales*, No. 04-13-00704-CV, 2014 Tex. App. LEXIS 11796, at *7 (Tex. App.—San Antonio Oct. 29, 2014, no. pet.) (mem. op.); *EMC Mortg. Corp. v Davis*, 167 S.W.3d 406, 419 (Tex. App.—Austin 2005, pet. denied). We review a decision by a trial court to grant attorney's fees under an abuse of discretion standard. *See EMC Mortg.*, 167 S.W.3d at 419; *see also Brady*, 145 F.3d at 716. A trial court abuses its discretion if it acts without reference to any guiding principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

The party seeking to recover attorney's fees carries the burden of proof thereon. *See Stewart Title Guar.*, 822 S.W.2d at 10. And as a general rule, when a party seeks a recovery for attorney's fees and he fails to submit the issue to the

70

jury, the failure to submit the issue to the jury will result in a waiver of the issue. *See* Tex. R. Civ. P. 279; *Wilie v. Montgomery Ward & Co.*, 291 S.W.2d 432, 437-38 (Tex. 1956); *Univ. of Tex. v. Ables*, 914 S.W.2d 712, 717 (Tex. App.—Austin 1996, no writ) ("The plaintiffs submitted no question to the jury concerning attorney's fees. Under the express provisions of Rule 279, they consequently waived any right to recover the fees."); *Loom Treasures, Inc. v. Terry Minke Adver. Design, Inc.*, 635 S.W.2d 940, 942 (Tex. App.—Fort Worth 1982, no writ) (holding that plaintiff's failure to submit attorney's fees to the jury constitutes a waiver of recovery).

Nguyen demanded a jury trial in her Original Petition, but she did not submit the issue to the jury. Instead, she filed a post-verdict motion to have the trial court decide and award her attorney's fees. When one party requests a jury trial and pays the jury fee, all other parties in the suit acquire the right to a jury trial and can rely upon another party's proper jury request. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). The County was entitled to a jury trial on the issue of attorney's fees, unless it waived its right to a jury trial on that issue or the parties agreed to submit the issue to the judge. The record shows no evidence that the parties agreed to try attorney's fees to the court. Accordingly, we must

determine whether the County waived its right to a jury trial on the issue of attorney's fees by failing to object or respond to the post-verdict motion for attorney's fees.

A defendant must object in the trial court to the submission of the issue of attorney's fees being submitted to the judge or risk waiver of the right to have the jury decide the issue. *See In re A.M.*, 936 S.W.2d 59, 61 (Tex. App.—San Antonio 1996, no writ); *Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assur. Co.*, 875 S.W.2d 385, 387 (Tex. App.—Dallas 1993, no writ) (A party can waive its right to a jury trial under the Texas Constitution, even if it has perfected its right, by failing to object at trial to the case being withdrawn from the jury.). Courts have held that a party's failure to timely object to the submission of attorneys' fees to the court waives its complaint on appeal, even when the right to a jury trial has previously been perfected. *See Burlington Ins. Co. v. Mex. Am. Unity Council, Inc.*, 905 S.W.2d 359, 363 (Tex. App.—San Antonio 1995, no writ); *McInnes v. Fife*, No. 14-00-00201-CV, 2001 Tex. App. LEXIS 4615, at *2 (Tex. App.—Houston [14th Dist.] July 12, 2001, no pet.) (not designated for publication) (appellant failed to preserve an argument on appeal where appellant did not object at trial that attorney's fees were not submitted to the jury). The County filed no

response to Nguyen's post-trial request to have the court decide her attorney's fees. We conclude that the County failed to preserve its argument for appellate review regarding the denial of the right to have attorney's fees decided by the jury. *See* Tex. R. App. P. 33.1(a).

The County also argues that it was improper for the trial court to allow the plaintiff to reopen the evidence on attorney's fees pursuant to Texas Rule of Civil Procedure 270 because ". . . in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." Tex. R. Civ. P. 270.[12] The County also observes that Nguyen never filed a motion for leave to reopen the evidence. Rule 270 provides that the trial court may consider new evidence at any time if necessary to the due administration of justice, and by its express terms it does not require a motion to reopen. *See, e.g.*, *In re J.A.W.*, 976 S.W.2d 260, 263-64 (Tex. App.—San Antonio 1998, no pet.). Therefore, the absence of a motion to reopen the evidence is not significant. On the other hand, the limitation set forth in Rule 270 that "in a jury case no evidence on a controversial matter shall be received after the verdict of the jury[,]" is significant if the issue of attorney's fees was a

---

[12]"When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." Tex. R. Civ. P. 270.

"controversial matter." The County has failed to provide any citation to the record indicating that the issue of attorney's fees was a controversial matter. The County did not respond to Nguyen's motion for attorney's fees, it did not object to having the trial court decide the attorney's fees issue, and it did not file any objections or controverting affidavits on the amount of attorney's fees. Because the County failed to file a response or object in the trial court or otherwise make the trial court aware of its complaint, the County waived its challenge to the submission of the issue of attorney's fees to the court or to the trial court's consideration of the evidence. *See* Tex. R. App. P. 33.1(a) (to preserve error, a party must make a complaint by a timely request, objection, or motion to the trial court, state the grounds for its objection where not apparent from the context, and obtain a ruling thereon); *see generally*, *Holden v. Holden*, 456 S.W.3d 642, 649-50 (Tex. App.—Tyler 2015, no pet.) (in a bench trial, Rule 270 does not require a motion to reopen for a trial court to consider additional evidence after both parties have rested; however, a party waives its right to complain on appeal if it fails to object to the trial court regarding its consideration of such additional evidence). We overrule the County's fourteenth appellate issue as to attorney's fees.

## 4. Prejudgment Interest

In its final appellate issue, the County also argues that the trial court erred in calculating prejudgment interest and further that a "clerical error" was made in the calculation of prejudgment interest. The County does not contest the interest rate applied by the trial court.

The record in this matter does not reflect that the County ever brought the "clerical error" it alleges to the attention of the trial court by means of a motion to modify or reform the judgment or by other means. As a general matter, failure to object to the trial court concerning an award of prejudgment interest waives the issue on appeal. *See Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987); *Henry v. Thompson*, No. 01-01-01211-CV, 2003 Tex. App. LEXIS 2246, **14-15 (Tex. App.—Houston [1st Dist.] Mar. 13, 2003, no pet.) (mem. op.) (failure to make trial court aware of error in prejudgment interest waives the complaint on appeal).

Nevertheless, because our decision reforms the trial court's damage award, we remand to the trial court for a new calculation of prejudgment interest, and we otherwise do not decide whether the trial court erred in calculating prejudgment interest or whether a "clerical error" was made. *See, e.g.*, *Man Indus. (India) Ltd. v.*

*Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 369 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (in part modifying and in part affirming award of damages and remanding for calculation of prejudgment interest). We sustain in part issue fourteen, and we remand to the trial court to recalculate the prejudgment interest in a manner that is consistent with our opinion.

## DUPLICATIVE APPELLATE ISSUES

In its twelfth issue, the County contends that there is no evidence or insufficient evidence to support the jury's affirmative response to each of the jury questions; and, in its thirteenth issue, the County complains that that it was error for the trial court to fail to grant some or all of Appellant's Motion for JNOV.

Assuming a party has properly preserved error, its brief on appeal must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Proper briefing specifically identifies a question of law for appellate review, clearly articulates an argument, supports statement of facts with references to the record, and refers to applicable legal authority. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). Failure to comply with

briefing requirements results in waiver of the issue on appeal. *See Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied).

In its appellate brief, the County's argument pertaining to appellate issues twelve and thirteen globally states "[a]s shown in the foregoing Argument and Authorities[,]" the issues were "unsupported in the record" and the trial court erred in not granting the County's JNOV. The County then cites without any discussion to *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 932-33 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.), and *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). And the County concludes "[t]herefore, the Judgment below should be reversed and rendered that Nguyen take nothing by her suit."

Appellate issues twelve and thirteen are duplicative of the other appellate issues, and the County has failed to state or identify any additional legal question for review. *See* Tex. R. App. P. 38.1(i). We conclude that appellate issues twelve and thirteen raise no additional legal argument that would be necessary to the final disposition of the appeal. *See* Tex. R. App. P. 47.1. Therefore, we overrule the County's twelfth and thirteenth issues.

CONCLUSION

We conclude that legally sufficient evidence supports the jury's findings in response to jury questions 1 and 2, pertaining to Nguyen's First Amendment retaliation claim under 42 U.S.C. § 1983 as to Precinct 8. We also overrule the County's challenges to the jury's finding on jury question 6(c)(1) for loss of earnings in the past and affirm the trial court's judgment awarding Nguyen $75,000 in damages for lost earnings in the past for Nguyen's First Amendment retaliation claim under 42 U.S.C. § 1983 pertaining to Nguyen's employment in Precinct 8. We overrule the County's challenges to the jury's finding on jury question 6(d)(1) and affirm the trial court's judgment awarding Nguyen $50,000 for Nguyen's First Amendment retaliation claim under 42 U.S.C. § 1983 pertaining to Nguyen's employment in Precinct 8. We also affirm the trial court's judgment awarding Nguyen attorney's fees. We reverse and render judgment that Nguyen is not entitled to recover on any of her claims arising out of her employment in Precinct 1. We also reverse the trial court's judgment awarding Nguyen $75,000 for mental anguish damages in the past as relating to Precinct 8 and render judgment that Nguyen is not entitled to recover any damages for mental anguish in the past. Finally, having reversed and rendered that Nguyen is not entitled to a

recovery on her claims as to Precinct 1, and having reversed and rendered that she is not entitled to a recovery for mental anguish damages, we reverse and remand to the trial court solely for a recalculation of prejudgment interest on damages consistent with this opinion.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED IN PART.

_____
LEANNE JOHNSON
Justice

Submitted on October 15, 2014
Opinion Delivered July 31, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.